## LOUISVILLE & NASHVILLE RAILROAD COMPANY
### *v.* CHATTERS.

## SOUTHERN RAILWAY COMPANY ᴇᴛ ᴀʟ. *v.* SAME.

Nos. 414 and 415.   Argued March 7, 1929.—Decided April 15, 1929.

*Mr. Harry McCall,* with whom *Messrs. A. M. Warren, George Denegre, Victor Leovy, Henry H. Chaffe,* and *Jas. Hy. Bruns* were on the brief, for Louisville & Nashville R. Co.

322

*Mr. J. Blanc Monroe,* with whom *Messrs. Monte M. Lemann, Walter J. Suthon, Jr., L. E. Jeffries, S. R. Prince,* and *H. O'B. Cooper* were on the brief, for the Southern Ry. Co. et al.

*Mr. George Piazza,* with whom *Mr. St. Clair Adams* was on the brief, for respondent.

Mr. JUSTICE STONE delivered the opinion of the Court.

Respondent, a citizen of Louisiana, brought suit in the District Court for Eastern Louisiana against the Southern

Railway Company, a Virginia corporation, and the Louisville & Nashville Railroad Company, a Kentucky corporation, to recover for personal injuries suffered while traveling in a car of the Southern Railway in a through train from New Orleans, Louisiana, to Washington, D. C. At the time of the accident, the train was being operated by the Southern over its tracks in Virginia.

Respondent purchased a through coupon ticket for the journey at the office of the Louisville & Nashville in New Orleans, which entitled him to passage over the line of the Louisville & Nashville from New Orleans to Montgomery, Alabama, over the Atlanta & West Point Railroad from Montgomery to Atlanta, Georgia, and thence to Washington over the line of the Southern. He took passage in New Orleans on a car of the Southern and proceeded in it on his journey until, while on the line of the Southern in Virginia, a window screen, attached to the outside of the car, became loosened and swung backward on its hinges so as to strike and break the car window behind it and injure respondent with pieces of flying glass. The train was made up by the Louisville & Nashville in New Orleans, and was operated under an agreement among the three carriers concerned, which was not offered in evidence. But it appeared that the cars composing the train were furnished by the three carriers on the basis of their respective mileage; that each furnished locomotive power and train crews over its own line; and that each, while in possession of the train, was in exclusive control of it.

Process against both petitioners was served on their respective agents in Louisiana, designated by them to receive service of process as required by a state law exacting formal consent by the corporation that any "lawful process" served on the designated agent should be "valid

service" upon the corporation. Act No. 184 of 1924.[1]
The Southern, appearing specially before answer, excepted
to the jurisdiction on the ground that the cause of action,
which was transitory, arose outside Louisiana and not out
of any business done by the Southern within that state.
After a hearing, in which evidence was introduced, the
exception was overruled. 17 F. (2d) 305. On the trial
the district court gave judgment on a verdict for respond-
ent against both petitioners, which was affirmed by the
Court of Appeals for the Fifth Circuit. 26 F. (2d) 403.
This Court granted certiorari. 278 U. S. 590.

The Southern alone seeks a review of the order over-
ruling its exception to the jurisdiction. The Louisville &
Nashville assigns as error the refusal of the trial court to
give a requested instruction to the jury. Both petition-
ers raise for consideration here exceptions to the charge
of the court to the jury and to the admission of certain
testimony.

1. The Southern insists that the case as to it should
have been dismissed on its exception for want of jurisdic-
tion of the person of the corporation upon a suit in
Louisiana on a cause of action arising outside that state.
A foreign corporation is amenable to suit to enforce a
personal liability if it is doing business within the juris-

---

[1] The scope of the designation is defined by the state statute as
follows:

"Section 2. The appointment of the agent or agents or officer
upon whom service of process may be made shall be contained in a
written power of attorney accompanied by a duly certified copy of
the resolution of the Board of Directors of said corporation consent-
ing and agreeing on the part of the said corporation that any lawful
process against the same which is served upon the said agent or
officer shall be a valid service upon said corporation and that the
authority shall continue in force and be maintained as long as any
liability remains outstanding against said corporation growing out of
or connected with the business done by said corporation in this
State."

diction in such manner and to such extent as to warrant the inference that it is present there. *Lafayette Insurance Co.* v. *French*, 18 How. 404; *Mutual Life Ins. Co.* v. *Spratley*, 172 U. S. 602; *St. Louis Southwestern Ry.* v. *Alexander*, 227 U. S. 218. Even when present and amenable to suit it may not, unless it has consented, *Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining Co.*, 243 U. S. 93; *Smolik* v. *Phila. & Reading Coal Co.*, 222 Fed. 148, be sued on transitory causes of action arising elsewhere which are unconnected with any corporate action by it within the jurisdiction. *Old Wayne Mut. Life Ass'n* v. *McDonough*, 204 U. S. 8; *Simon* v. *Southern Ry. Co.*, 236 U. S. 115.

It is urged by the Southern that compliance with the Louisiana statute requiring a foreign corporation doing business within the state to designate an agent to receive service of process is, under the state decisions, a consent to suit only upon causes of action arising out of business conducted within the state, *Watkins* v. *North American Land & Timber Co.*, 106 La. 621; *Delatour & Marmouget* v. *Southern Ry. Co.*, 4 La. App. 658; *Buscher* v. *Southern Ry. Co.*, 4 La. App. 653; see *Missouri Pac. R. R. Co.* v. *Clarendon Boat Oar Co.*, 257 U. S. 533, which, it is insisted this is not, and that in any case, in the absence of an authoritative decision by the state court, this Court will give a like effect to the designation under the statute. *Mitchell Furniture Co.* v. *Selden Breck Const. Co.*, 257 U. S. 213. For present purposes we may assume that the effect of the designation of the statutory agent by the Southern is, as the state decisions cited seem to show, that a cause of action arising wholly outside and wholly unconnected with any act or business of the corporation within the state may not be sued upon there, and we address ourselves to the question, decisive of this branch of the case, whether the Southern, being present within the state of Louisiana, is amenable to suit, on this cause

of action as one arising out of business done within the state, or from such action of the corporation within the state as to subject it to liability there.

The Southern does not deny that it is carrying on some business within Louisiana or that it is subject to suit there on some causes of action. Its relation to the through train service originating in New Orleans, so far as disclosed, has already been detailed. It carries on in the state, through an office and agents of its own there located, continuous solicitation of freight and passenger traffic. See *International Harvester Co.* v. *Kentucky,* 234 U. S. 579; *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 103; *Block* v. *Atchison, Topeka & S. F. R. R. Co.,* 21 Fed. 529; *Walsh* v. *Atlantic Coast Line R. R. Co.,* 256 Fed. 47; but see *Green* v. *C. B. & Q. Ry.,* 205 U. S. 530; *People's Tobacco Co.* v. *American Tobacco Co.,* 246 U. S. 79. It maintains its own office there for the sale of tickets for passage over its own and connecting lines. Cf. *International Harvester Co.* v. *Kentucky, supra,* at p. 585. It has designated an agent there to receive service of " lawful process," which fact, being of significance in determining the extent of the jurisdiction when the corporation is doing business within the state, *Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining Co., supra,* is, we think, also of decisive weight in determining its presence for purposes of suit when coupled with its other corporate activities within the state. It is, therefore, as petitioner concedes, so far present in the state as to be amenable to suit there for some purposes. *St. Louis Southwestern Ry.* v. *Alexander, supra.* We disregard the fact that the Southern owns the stock, or most of it, of the New Orleans Railroad Company and the New Orleans Terminal Company, Louisiana corporations owning real estate and railroad equipment there, and that its officers and theirs are the same. *Peterson* v. *Chicago, R. I. & Pac. Ry.,* 205 U. S. 364; *Phila. & Reading Ry. Co.* v. *McKibbin,* 243, U. S. 264.

The cause of action here asserted is one arising out of a contract for transportation, evidenced by the through ticket sold to respondent in New Orleans and accepted by the Southern for transportation over its line. It purported on its face to be sold by the Louisville & Nashville as agent and was sold under a joint tariff agreed to by the carriers concerned and filed by them with the Interstate Commerce Commission providing that the carrier selling the ticket acted as agent of the others. Had the ticket been sold to respondent by the Southern at its own ticket office in New Orleans, we may assume that it would not have been seriously contended that the cause of action did not arise out of the business of the Southern in Louisiana, or that the present suit could not have been maintained there, even though the wrongful act complained of took place elsewhere. But it is said that as the ticket was sold by the Louisville & Nashville, that transaction alone, under the decisions of this Court, would not constitute doing business within the jurisdiction so as to make the Southern amenable to suit there. *Peterson* v. *Chicago, R. I. & Pac. Ry. Co.,* supra; *Phila. & Reading Ry. Co.* v. *McKibbin, supra; General Inv. Co.* v. *Lake Shore & M. S. Ry. Co.,* 250 Fed. 160. From this it is argued that the sale of the ticket cannot be considered any part of the business carried on within the state by the Southern and that the present cause of action is therefore not within the consent to suit given by its designation of an agent, or to be implied from its presence and transaction of business within the state.

But the sale in Louisiana of the ticket for transportation over the Southern was made by the Louisville & Nashville under the filed joint tariff as the agent and for account of the Southern. In its legal effect it was the act of the Southern within the jurisdiction by which its obligation to respondent on the contract of carriage over its own lines became complete. It was out of this

action within the state that the present obligation of the Southern arose, although the alleged breach of it occurred elsewhere.

This was none the less the case because such a transaction would not of itself have been regarded as a doing of business within the state sufficient to establish the presence of the Southern there for the purpose of suit. Cf. *Rosenberg Bros. & Co.* v. *Curtis Brown Co.*, 260 U. S. 516. Since the Southern was present and subject to suit in Louisiana, we are concerned, not with the question whether the sale of the ticket was sufficient to bring it there, but only with the question whether, being there, its liability extended to all causes of action, arising out of its corporate acts within the state, including this one. No case, either in the Louisiana courts or in this Court, has held that it did not. Where jurisdiction has been denied, the cause of action not only arose outside the state, but it was not shown to have arisen out of any business conducted by the corporation within it or to have had any relation to any corporate act there. Cf. *Old Wayne Mutual Life Ass'n* v. *McDonough, supra; Simon* v. *Southern Ry. Co., supra; Mitchell Furniture Co.* v. *Selden Breck Const. Co., supra.* In such a case, whether the jurisdiction invoked be deemed to depend upon the presence of the corporation within the state through the doing of business there, or on its consent by the designation of an agent, the implication is that the liability to suit does not extend to causes of action which have nothing to do with any act of the corporation within the state. *Mitchell Furniture Co.* v. *Selden Breck Const. Co.,* at p. 216. But where the cause of action does arise out of a corporate act within the jurisdiction, the presumption would seem necessarily to be the other way.

In the absence of express language limiting the authority of the designated agent, there would certainly be no

ground for assuming that the consent extends to causes of action growing out of some of its acts within the jurisdiction and not others—that respondent here might maintain an action if the ticket had been sold at the office of the Southern, but not if sold at the office of its authorized agent in the same city. Once established that the foreign corporation is within the state for purposes of suit, its presence for that purpose would seem to be co-extensive with its presence for the purpose of carrying on any corporate transaction within the jurisdiction and, granted the former, its liability to suit on causes of action growing out of the latter should follow. To say that not every corporate act within the jurisdiction is sufficient to establish its presence there for the purpose of suit is very different from saying that a suit founded upon such an act may not be maintained there, once its presence and consent to suit are established.

We decide only that, in the absence of an authoritative state decision giving a narrower scope to the power of attorney filed under the state statute, it operates as a consent to suit upon a cause of action like the present arising out of an obligation incurred within the state although the breach occurred without. See *Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining Co., supra.*

2. The requested instruction to the jury of the Louisville & Nashville, which was refused, and the actual charge complained of, related to the alleged joint liability of the petitioners. The complaint contained no allegation that respondent's injury was due to the negligence of the Louisville & Nashville. He contented himself with alleging and proving at the trial the accident and injury while he was traveling over the line of the Southern on a through ticket purchased of the Louisville & Nashville. As already indicated, it appeared that the Louisville & Nashville had no control of the train after

it left its own tracks and each carrier furnished its own locomotive power and train crew. Each inspected, cleaned, washed and repaired the equipment of the train. It also appeared that the ticket sold by the Louisville & Nashville contained a clause reading: " In selling this ticket and checking baggage thereon the selling carrier acts only as agent and is not responsible beyond its own line." The through tariff filed by petitioners with the Interstate Commerce Commission under § 6 of the Interstate Commerce Act, February 4, 1887, c. 104, 24 Stat. 379, 380, as amended by Act of February 28, 1920, c. 91, 41 Stat. 456, 483, contained a similar provision.

At the close of the whole case, the Louisville & Nashville moved for a directed verdict, which was denied. The trial judge also denied its request for an instruction that if the jury found the ticket contained the clause referred to, the accident did not occur on the line of the Louisville & Nashville, and its negligence did not cause or contribute to the accident, the verdict should be for that carrier. The court also charged, in a variety of ways, that the liability of petitioners for the safe delivery of the respondent at his destination was joint and that if petitioners " failed to satisfactorily explain the accident, then negligence will be presumed and they will therefore be liable to the passenger for whatever damage he sustained."

But there was no basis, either in pleading or proof, for a joint liability of both petitioners for the negligence of one. Neither of them, as a common carrier, was under any duty, either by the common law or statute, to transport or assume any responsibility for the transportation of respondent beyond its own line. *Insurance Company* v. *Railroad Company*, 104 U. S. 146, 157; see *Railroad Company* v. *Manufacturing Co.*, 16 Wall. 318, 324. The Louisville & Nashville, therefore, might, by stipulation on the through ticket, provide that it should not be so responsible, *Missouri*

*Pac. R. R. Co.* v. *Prude,* 265 U. S. 99; cf. *Western Union Tel. Co.* v. *Czizek,* 264 U. S. 281; and in any case, the transportation service to be performed was that of a common carrier in interstate commerce under published tariffs and the attendant limitation of liability in the tariff became the lawful condition upon which the service was rendered, binding alike on the carrier and its patron, cf. *American Ry. Express Co.* v. *Daniel,* 269 U. S. 40; *Western Union Tel. Co.* v. *Priester,* 276 U. S. 252, 259; *Chicago & Alton R. R. Co.* v. *Kirby,* 225 U. S. 155; *Davis* v. *Cornwell,* 264 U. S. 560, and was not subject to waiver. Cf. *Davis* v. *Henderson,* 266 U. S. 92; see *Georgia, Fla. & Ala. Ry.* v. *Blish Milling Co.,* 241 U. S. 190, 197. There was, therefore, no evidence of joint liability of the petitioners in the case, and there could be no liability of either for injury to respondent occurring beyond its own line except on the theory that its own negligence caused or contributed to the injury.

The court of appeals, in commenting on petitioner's requested charge, to which we have referred, said that such a charge would not have been proper because it was calculated to divert the jury from the consideration of the question whether the accident was attributable to the negligence of the Louisville & Nashville. Even if for this reason the requested instruction should have been refused, the charge, to which proper exception was taken, that petitioners were jointly liable and that on this theory the jury might find a verdict against the Louisville & Nashville for an accident occurring on the line of the Southern, was plainly erroneous, as it indicated to the jury that they might find a verdict for respondent against the Louisville & Nashville, even though it had exercised due care in the preparation and inspection of the train while on its own line.

We think also there was no evidence for the jury of negligence of the Louisville & Nashville and that the motion

for a directed verdict in favor of that railroad should have been granted. There was no evidence of the precise cause of the loosening of the screen which caused the injury. Whether the screw which fastened it was improperly replaced by the employees of the Louisville & Nashville after cleaning the window, or whether it broke or otherwise became loosened on account of some hidden or unascertainable defect, or was loosened by others than the employees of either petitioner, does not appear. There was evidence of an inspection of the car by the Louisville & Nashville before it left New Orleans. After the car left the line of the Louisville & Nashville it came into the custody of the Atlanta & West Point Railroad Company. The occurrence of the accident after the car passed beyond the control of the Louisville & Nashville and that of the intermediate carrier to the tracks of the Southern does not admit of the application of the doctrine of *res ipsa loquitur,* so far as concerns the Louisville & Nashville. *McNamara* v. *Boston & Maine R. R.*, 202 Mass. 491, 499; *L. & N. R. R. Co.* v. *Mink,* 168 Ky. 394; cf. *Glynn* v. *Central Railroad,* 175 Mass. 510; *Missouri, Kansas & Texas Ry. Co.* v. *Merrill,* 65 Kan. 436. Without resort to this doctrine, the cause of the accident and the relation of the Louisville & Nashville to it are matters of mere speculation and conjecture which should have been withdrawn from the consideration of the jury. *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Coogan,* 271 U. S. 472, 478; *St. Louis-San Francisco Ry. Co.* v. *Mills,* 271 U. S. 344, 347.

The charge as to the joint liability of petitioners was also excepted to by the Southern " in so far as it makes the Southern Railway Company responsible for the negligence of the Louisville & Nashville." To that extent it was clearly erroneous and prejudicial to the Southern. The jury was in effect told to return a verdict against both petitioners on a finding of negligence on the part of either.

As there was evidence of repeated inspections of the window screens by the Southern after the car reached its line and before the accident, from which the jury might have found that there was no want of care on the part of the Southern, the jury may have found that the accident was due to the negligence of the Louisville & Nashville and so have returned a verdict against both. Even though the issue of the Southern's own negligence was for the jury, it was entitled to have the issue submitted unprejudiced by the erroneous instruction which authorized a verdict against the Southern on the theory of joint liability if the jury should conclude that the Louisville & Nashville alone was negligent.

3. As there must be a new trial, it is unnecessary to consider the rulings on the evidence which the court below thought erroneous, but not prejudicial. The order overruling the Southern's exception to the jurisdiction is affirmed. The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*